FILED
2021 Jul-27  PM 02:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **9ROOFTOPS MARKETING, LLC,** | ] | |
| **f/k/a BLR FURTHER, LLC,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **2:20-cv-02001-ACA** |
| | ] | |
| **SW SAFETY SOLUTIONS, INC.,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION

After Defendant SW Safety Solutions, Inc. ("SW Safety") refused to pay $128,955.04 for services Plaintiff 9Rooftops Marketing, LLC f/k/a BLR Further, LLC ("9Rooftops") performed, 9Rooftops filed this lawsuit, asserting claims for breach of contract and quantum meruit/unjust enrichment. (Doc. 1 at 5). SW Safety moves to dismiss the complaint for lack of personal jurisdiction, under Federal Rule of Civil Procedure 12(b)(2), and for improper venue, under Rule 12(b)(3). (Doc. 16). Because SW Safety's Rule 12(b) motion is procedurally improper, and at the parties' request (doc. 22 at 1), the court converts the motion to dismiss into a motion for summary judgment.

The court concludes that SW Safety did not have sufficient minimum contacts with Alabama to satisfy the Due Process Clause of the Fourteenth Amendment and

therefore **WILL GRANT** the motion for summary judgment for lack of personal jurisdiction and **WILL DISMISS** this action **WITHOUT PREJUDICE**.

## I.   BACKGROUND

In deciding a motion for summary judgment due to lack of personal jurisdiction, the court takes the allegations in the complaint as true to the extent that the defendant has not controverted them with evidence. *Ruiz de Molina v. Merritt Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000); *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  Where the parties' evidence conflicts, the court must accept the plaintiff's evidence. *Ruiz de Molina*, 207 F.3d at 1356.  And the court must draw all reasonable inferences in the plaintiff's favor. *Id.*

SW Safety, a California-based manufacturer and seller of gloves, was looking for advertisement services to market its new GraphEx glove nationwide.  (Doc. 16-1 at 2 ¶¶ 1–4).  After a recommendation from another marketing firm (doc. 16-1 at 3 ¶¶ 4–5), SW Safety requested a proposal of advertisement services from BLR Further, an Alabama limited liability company that 9Rooftops later acquired.  (Doc. 1 at 1 ¶¶ 1–2, 2 ¶ 8).  BLR Further suggested that two of its employees travel to California to give a presentation at SW Safety's office.  (Doc. 16-1 at 3 ¶ 6).  After that presentation, SW Safety requested estimates for "performing ad campaigns, website rebuild, customer acquisition, and other services," which BLR Further provided in April 2019.  (Doc. 1 at 3–4 ¶ 9–10).

The next month, BLR Further employees traveled to California to make another presentation to SW Safety. (Doc. 1 at 1 ¶ 11; Doc. 16-1 at 3 ¶ 7). In June 2019, SW Safety's marketing director "indicated that SW Safety wanted to run a GraphEx ad campaign with BLR" (doc. 1 at 3 ¶ 14) and asked BLR Further to create a lead generation plan (*id.* at 4 ¶ 19). In June and July 2019, BLR Further designed an ad concept that SW Safety used in a trade show flier, it produced an ad that SW Safety ran in a magazine, and it created a lead generation plan that it revised with input from SW Safety. (*Id.* at 3–4 ¶¶ 15–16, 19). During this time, SW Safety's employees engaged in multiple conference calls and exchanged multiple emails with BLR Further employees. (Doc. 19-1 at 2–3 ¶¶ 5–6).

BLR Further's employees did "most if not" all of their work for SW Safety in Alabama. (Doc. 1 at 4 ¶ 21). But SW Safety's marketing director attested that she did not care where BLR Further performed the work. (Doc. 16-2 at 3 ¶ 7).

At some point after July 12, 2019, "communications ceased and it became clear that the business relationship would not go forward." (Doc. 1 at 4 ¶ 20). BLR Further submitted invoices requesting payment be sent to its office in Birmingham, Alabama. (*Id.* at 4 ¶ 22). But although SW Safety sent one check for $14,950.04, it later stopped payment on the check. (*Id.* at 4 ¶ 23). It has refused to pay any of the $128,955.04 owed to BLR Further. (*Id.* at 4–5 ¶ 25).

3

## II.   DISCUSSION

SW Safety moves for summary judgment due to lack of personal jurisdiction and improper venue.  (Doc. 22).  Because 9Rooftops has not carried its burden of showing that the court has personal jurisdiction over SW Safety, the court rules only on the personal jurisdiction issue.

To determine whether personal jurisdiction exists in a case brought in federal court pursuant to diversity jurisdiction, the court must undertake a two-step analysis. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc,* 593 F.3d 1249, 1257 (11th Cir. 2010).  First, the court must assess whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute.  *Id.*  Second, the court must assess whether the exercise of jurisdiction violates the Fourteenth Amendment's Due Process Clause.  *Id.*  Here, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible."  *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).

The Due Process Clause permits two kinds of personal jurisdiction: general and specific.  *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.,* 137 S. Ct. 1773, 1779–80 (2017).  9Rooftops concedes that this court does not have general personal jurisdiction over SW Safety (doc. 19 at 5), so the only question is whether the court has specific personal jurisdiction over SW Safety.

Specific personal jurisdiction is jurisdiction that "aris[es] out of a party's activities in the forum state that are related to the cause of action alleged in the complaint." *Sloss Indus. Corp.*, 488 F.3d at 925 (quotation marks omitted); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (explaining that individuals have a protected liberty interest to be free from judgments of "a forum with which he has established no meaningful contacts, ties, or relations," such that the non-resident defendant must have "fair warning" that he may be subject to suit in the forum) (quotation marks omitted). The court has specific jurisdiction over a non-resident defendant only if the defendant's contacts with the forum state are: (1) "related to the plaintiff's cause of action or . . . [gave] rise to it"; (2) "involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum"; and (3) are "such that the defendant should reasonably anticipate being haled into court there." *Id.* (quotation marks omitted). If the defendant's contacts with the forum state satisfy those criteria, the court must determine whether the exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." *Id.* at 925.

9Rooftops' complaint alleges SW Safety's refusal to pay for the advertising services provided by BLR Further was a breach of contract, and alternatively that SW Safety was unjustly enriched by receiving the services without paying for them. (Doc. 1 at 5–6 ¶¶ 26–35). SW Safety's only contacts with Alabama that are related

to these claims are its telephone calls and emails with BLR Further employees located in Alabama, BLR Further's request for payment to be sent to Alabama, and the check SW Safety sent to Alabama on which it stopped payment. (*See* Doc. 1 at 2–5). The evidence submitted by both parties could also be construed to suggest that SW Safety requested BLR Further employees, who were based in Alabama, to travel to California for the second presentation. (*See* Doc. 1 at 2 ¶¶ 9–10). The claims of breach of contract and unjust enrichment are related to these contacts, satisfying the first part of the test.

The next question is whether SW Safety purposefully availed itself of the privilege of conducting activities within Alabama, invoking the benefits and protections of its laws. *See Sloss Indus. Corp.*, 488 F.3d at 925. 9Rooftops argues that SW Safety did so through the contract negotiations with BLR Further employees located in Alabama and through the mailing of a check to Alabama. (Doc. 19 at 8–9). The court is not persuaded.

The Eleventh Circuit has held that "a direct solicitation by a foreign defendant of the business of a forum resident" may amount to purposeful availment when the parties contemplated either a "continuing relationship" or "some in-forum performance on the part of the plaintiff." *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 994 (11th Cir. 1986). In-forum performance cannot be the basis of purposeful availment here because SW Safety has established that it

did not care where BLR Further performed its work.  (Doc. 16-2 at 3 ¶ 7).  So the court must determine whether SW Safety and BLR Further's relationship was the type of "continuing relationship" that could establish purposeful availment.

The Supreme Court has held that purposeful availment exists where the non-forum defendant "created 'continuing obligations' between himself and residents of the forum."  *Burger King*, 471 U.S. at 479 (quoting *Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n*, 339 U.S. 643 648 (1950)).  But "a contract with an out-of-state corporation, standing alone, is insufficient to create minimum contracts because a contract is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'"  *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 811 (11th Cir. 2010) (quoting *Burger King*, 471 U.S. at 479).  In *Burger King*, the Supreme Court found a sufficient continuing relationship because the non-forum defendant entered a 20-year franchise contract "that envisioned continuing and wide-reaching contacts with Burger King in Florida," including a choice-of-law provision requiring the use of Florida law.  *Burger King*, 471 at 480, 482.

By contrast, the Eleventh Circuit has found a contractual relationship insufficient where the contract was for a one-time performance, negotiations were conducted in part within the forum, in part in another country, and in part by fax,

and the contract included an English choice-of-law provision.  *Sea Lift, Inc.*, 792 F.2d at 994.  In a more recent case, the Eleventh Circuit found negotiation of a contract insufficient to confer personal jurisdiction where the non-forum defendant solicited the forum plaintiff for a one-shot operation, the defendant's duties were to be performed outside the forum, the non-forum defendant did not have any physical presence in the forum, and the contract's choice-of-law provision chose a different forum's law.  *PVC Windoors, Inc.*, 598 F.3d at 811–12.

In this case, SW Safety and BLR Further may have entered an oral contract, but BLR Further has not presented any evidence about the duration of that contract, the existence of an Alabama choice-of-law provision, any negotiations that took place physically in Alabama, or any requirement that BLR Further perform its work in Alabama.  To the contrary, SW Safety has proved that it did not care where BLR Further performed the work.  (Doc. 16-2 at 3 ¶ 7.)  To the extent 9Rooftops relies on SW Safety's conference calls and emails with BLR Further employees located in Alabama, a party does not purposefully avail itself of the privileges of conducting activities within a State by having "contacts with persons who reside there."  *Walden v. Fiore,* 134 S. Ct. 1115, 1122 (2014).  Finally, the check that SW Safety mailed to Alabama cannot establish purposeful availment.  *See Sea Lift, Inc.,* 792 F.2d at 994 ("The actual mailing of payments to the forum state has been held not to weigh heavily in [the purposeful availment] determination.").  The court therefore

concludes that 9Rooftops has not carried its burden of establishing that SW Safety purposefully availed itself of the privileges of conducting activities in Alabama.

A lack of purposeful availment suffices to find that the court does not have personal jurisdiction over SW Safety. Nevertheless, the court also finds that SW Safety did not reasonably anticipate being haled into court in Alabama. BLR Further's two trips to California in the course of negotiating a contract to perform services that could be completed anywhere do not give rise to a reasonable anticipation that SW Safety could be sued in Alabama. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.,* 218 F.3d 1247, 1251 (11th Cir. 2000) (finding that a non-forum defendant did not reasonably anticipate being sued in Florida after the Florida plaintiff engaged in telephone negotiations, traveled to the defendant's offices to make a presentation, and ultimately entered into a contract to perform work that could be done anywhere).

9Rooftops relies on *Diamond Crystal Brands, Inc.* to establish personal jurisdiction, but that case is distinguishable, involving as it did a longstanding contract for the sale of goods, which the defendant sent agents into the forum state to pick up. 593 F.3d at 1255–56. Indeed, the Court in *Diamond Crystal Brands* reiterated that personal jurisdiction is lacking when "the buyer's sole contact with the forum is contracting with a resident seller who performs there." *Id.* at 1268.

Here, SW Safety's only relevant contact with Alabama was entering a contract with BLR Further, who chose to perform the work in Alabama.

Because 9Rooftops has not established that SW Safety had minimum contacts with Alabama, the court **WILL GRANT** the motion for summary judgement and **WILL DISMISS** the case without prejudice.

## III.   CONCLUSION

The court **WILL GRANT** SW Safety's motion for summary judgment, and **WILL DISMISS** the complaint **WITHOUT PREJUDICE**.

The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this July 27, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE